UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT MOORE,

     Petitioner,

v.

THOMAS MACKIE,

     Respondent.

_____

CASE NO. 2:15-cv-13319

HON. JAMES G. CARR

MAG. MONA K. MAJZOUB

## ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

# TABLE OF CONTENTS

Introduction ................................................................................... 1

    Statements in Compliance with Habeas Rule 5(b) ......................... 3

        A.    Statute of Limitations ................................................. 3

        B.    Exhaustion ................................................................. 3

        C.    Procedural Default .................................................... 3

        D.    Non-retroactivity Doctrine ....................................... 3

Statement of the Case ................................................................. 4

        A.    Trial Facts ................................................................. 4

        B.    Procedural History ................................................... 6

Argument ..................................................................................... 10

I.    Moore's claim that trial counsel was ineffective for failing to investigate and discover the West Virginia witnesses is barred by AEDPA's one-year statute of limitations ...................... 10

II.    Moore has not shown that trial counsel was constitutionally ineffective for failing to investigate and discover David Carbin. ................................................................................ 13

III.    Moore has not shown that trial counsel was constitutionally ineffective for failing to investigate and discover the West Virginia witnesses. .......................................................... 18

Conclusion ................................................................................... 23

Relief ............................................................................................ 27

Certificate of Service ................................................................... 28

## INTRODUCTION

Petitioner, Vincent LeCurtis Moore, along with accomplices, robbed and murdered William Ferguson after Ferguson and his girlfriend Heather Farnsworth arranged to buy Oxycontin from Moore.

As a result of his conviction by a Wayne County jury of one count of first-degree felony murder, Mich. Comp. Laws § 750.316, and one count of armed robbery, § 750.529, the State now holds Moore in custody in the Michigan Department of Corrections.  Moore is currently serving a sentence of life in prison for the murder conviction and 15 to 30 years for armed robbery, running concurrently.

The petition, as supplemented, raised four claims for habeas relief.  After the State moved to dismiss all claims as untimely, this Court granted the motion in part and denied it in part.  This Court held that one subclaim of the ineffective assistance of counsel claim was timely and that it had insufficient information to determine whether another subclaim was timely or not.  Following the dismissal of the claims this Court held to be untimely, the State understands the petition to be raising the following claim:

I.    Petitioner was deprived his Sixth Amendment right to
effective assistance of counsel requiring habeas relief
from his state court convictions.

Under this claim, two subclaims are before this Court: (a) that

trial counsel was ineffective for failing to investigate and discover David

Carbin, who has stated that he saw Moore leave the scene of the

murder a few hours before the murder took place, and (b) that trial

court was ineffective for failing to investigate and discover three

witnesses ("the West Virginia witnesses") who have executed affidavits

attesting that they could have testified about the prosecution witness.

Should the Court interpret the petition to be raising different

claims, the State requests an opportunity to file a supplemental

pleading.  To the extent that Moore failed to raise any other claims that

he raised in the state courts, those claims are now abandoned. *See*

*Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an

issue is abandoned if a party does not present any argument respecting

the issue in his brief).  Thus, habeas review of abandoned claims is

barred.

The State now answers the petition and requests that it be denied.

# STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

Moore's claims are barred by the applicable statute of limitations as more fully discussed in Argument I below.

### B.    Exhaustion

The State is not arguing that consideration of either of Moore's habeas subclaims is barred by the failure to exhaust a claim for which a state court remedy exists.

### C.    Procedural Default

The State is not arguing that consideration of either of Moore's habeas subclaims is barred by an unexcused procedural default.

### D.    Non-retroactivity Doctrine

The State is not arguing that consideration of either of Moore's subclaims is barred by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

### A.    Trial Facts

In its order granting in part and denying in part the State's

motion to dismiss, this Court reproduced the following statement of

facts from the prosecutor's brief on direct appeal:

> On September 4, 2010, the victim, William Ferguson, his
> girlfriend, Heather Farnsworth, and her friend, Krystal
> Breck, drove from Huntington, West Virginia to Detroit.
> Farnsworth and the victim had made arrangements to meet
> with defendant, Vincent Moore, and purchase 400 Oxycontin
> pills. Farnsworth had met defendant in West Virginia and
> had conducted drug purchases from him since then but this
> was the first time she and the victim had traveled to Detroit
> to purchase narcotics from defendant.
>
> The victim and his friends arrived in Michigan and
> Farnsworth contacted defendant to arrange for a place to
> meet. At approximately 9:30 a.m., Farnsworth parked the
> group's Chevrolet Impala at a Burger King restaurant near
> Gratiot Avenue in Detroit in order to wait for defendant.
> Defendant arrived 10 to 15 minutes later in a dark-colored
> Impala. Another male was with defendant in the car.
> Defendant spoke to Farnsworth and told her to follow him to
> a gas station. At the gas station, defendant went into the
> store. Defendant exited the store with a juice bottle.
> Defendant spoke to Farnsworth and told her to follow him to
> a house. At the house, defendant went inside for a short
> period of time. Defendant returned to his car and told
> Farnsworth to follow him to another house. Defendant led
> Farnsworth, the victim, and Breck to a house at 10643
> McKinney Street in Detroit.
>
> At the house on McKinney, defendant spoke to Farnsworth
> while she was still in her vehicle. Defendant offered

Farnsworth some marijuana and talked with her for a few minutes. Defendant then led Farnsworth, the victim, and Breck inside the house. The male that accompanied defendant to meet Farnsworth stayed in the dark-colored Impala. Inside the house was another male. The group talked inside the house for approximately 15 minutes. During this time, defendant was drinking from his bottle of juice and used his phone. Farnsworth left the house to go to her car and get cigarettes. The victim and Breck stayed inside the house with defendant and the other male. Outside, Farnsworth recorded the license plate number for the dark-colored Impala because she had a strange feeling that something was going to happen. Farnsworth returned to the house and gave defendant and the other man a cigarette. Farnsworth and the victim went into a separate room to count the money they intended to use to purchase the Oxycontin. Between Farnsworth and the victim, they had $14,000. The victim put the money into his pocket and Farnsworth told defendant that they were ready to purchase the pills.

Defendant talked with Farnsworth and the victim for a short period of time before indicating that he was going outside to get some marijuana. Defendant walked toward the rear of the house. A few seconds later, several men rushed into the house carrying guns. The other man in the house also grabbed a gun. Farnsworth believed that all the weapons were long guns. Farnsworth and Breck were ordered to get down. Farnsworth heard one of the men then direct another to hit the victim in the head. Farnsworth heard a loud smack and saw the victim fall down. The victim got back up and moved toward the front door. At that point, gunfire started. The victim fell again. Defendant, carrying a long gun, walked toward the victim. Defendant took the money from the victim and went toward the rear of the house again. The other men then left the house. Neighbors across the street from the house heard the gunshots and looked outside. Two men with their faces obscured walked from the side of the

house carrying long guns. The two men got into an Impala. The Impala went in reverse around the corner toward the side of the house and out of the neighbors' vision.

At least 13 ammunition casings were found inside of the house. The victim was shot four times. One bullet struck the victim in the back of the head and exited out the other side of the head after traveling through the brain. Another bullet struck the victim in the chest perforating both lungs and the pericardial sack. A third bullet hit the victim in the abdomen and a forth [*sic*] bullet broke the victim's left femur. The victim died from his wounds. Investigation of the evidence found at the murder scene revealed that the casings found were all ejected from the same weapon. The license plate number recorded by Farnsworth was registered to defendant's father. DNA found on a juice bottle and a cigarette located inside the house matched defendant.

(Order, ECF No. 22, PageID.3142–43 (quoting People's Br. on Appeal, ECF No. 16-31, PageID.2616–18).)

The State opposes any factual assertions made by Moore that are not directly supported by—or consistent with—the state court record, because he has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

## B.   Procedural History

Moore was charged with first-degree premeditated murder, first-degree felony murder, accessory after the fact to murder, armed robbery, and possession of a firearm during the commission of a felony

(felony-firearm).  The jury was also instructed to consider second-degree murder as a lesser offense of the first-degree murder charges.

The jury found Moore guilty of first-degree felony murder and armed robbery, and acquitted him of first-degree premeditated murder, accessory after the fact, and felony-firearm.  (9/6/11 Trial Tr. at 8–12.) The trial court sentenced him to life in prison.

Following his conviction and sentence, Moore filed a claim of appeal in the Michigan Court of Appeals, which raised the following claim:

I.     Ineffective assistance of counsel denied defendant a fair trial.

The Michigan Court of Appeals affirmed Moore's conviction in an unpublished opinion per curiam.  *People v. Moore*, No. 306669, 2013 WL 514815 (Mich. Ct. App. Feb. 12, 2013).

Moore did not appeal this decision to the Michigan Supreme Court.  He later returned to the trial court and filed a motion for relief from judgment under subchapter 6.500 of the Michigan Court Rules, raising two claims of error in jury deliberations.  The trial court denied relief, and the Michigan Court of Appeals and Michigan Supreme Court

denied his applications for leave to appeal.  (7/2/14 Mich. Ct. App Order;

*People v. Moore*, 860 N.W.2d 629 (Mich. 2015).)

Moore then filed a habeas petition in this Court, raising a claim of

error in jury deliberations.  (ECF No. 1.)  He then moved to stay the

petition and hold it in abeyance to return to state court and exhaust

additional issues.  (ECF No. 5.)  This Court granted the motion.  (ECF

No. 11.)

Moore then returned to the trial court again, filing a second

motion for relief from judgment, which raised the following claims:

> I.     A new trial should be ordered since newly discovered
>        evidence in the form of both eyewitness testimony and
>        critical background information establishes that the
>        key prosecution witness was not credible and
>        committed perjury at trial, and to effectuate
>        defendant's constitutional right to due process, the
>        right to present a defense and to trial by jury.
>
> II.    Defendant Moore was deprived of his Sixth
>        Amendment right to effective assistance of counsel.
>
> III.   Defendant Moore is entitled to relief and a new trial.
>
> IV.    Defendant Moore is entitled to an evidentiary hearing.

The trial court denied the motion for relief from judgment, and the

Michigan Court of Appeals and Michigan Supreme Court denied

Moore's applications for leave to appeal.  (12/21/17 Mich. Ct. App. Order; *People v. Moore*, 919 N.W.2d 60 (Mich. 2018).)

Moore then returned to this Court, filing a supplemental brief that raised the claims for relief he raised in his successive motion for relief from judgment.  (ECF No. 12.)  The State moved to dismiss on the grounds that the claims were untimely.  (ECF No. 15.)  This Court granted the State's motion in part and denied it in part, dismissing most of Moore's claims but holding that one subclaim of ineffective assistance was timely and that it did not have enough information to determine whether another subclaim was timely.  (ECF No. 22.)  This Court then ordered Moore to file a supplemental brief, and ordered the State to respond.

# ARGUMENT

## I.   Moore's claim that trial counsel was ineffective for failing to investigate and discover the West Virginia witnesses is barred by AEDPA's one-year statute of limitations.

In its previous order (ECF No. 22), this Court ruled on the timeliness of all of Moore's claims and subclaims except one: his argument that trial counsel was ineffective for failing to investigate and discover the West Virginia witnesses.  Based on Moore's supplemental brief, it is now clear that this claim is untimely.

Moore claims that it was only the fact that he received ineffective assistance of trial counsel Marvin Barnett that delayed him from discovering the West Virginia witnesses—in other words, that diligent counsel could have and would have discovered the West Virginia witnesses through a reasonable investigation.  In Moore's words, "Moore's exercise of due diligence was *only* circumvented by Barnett's ineffective assistance of counsel."  (Pet'r's Supp. Br. at 37, ECF No. 24, PageID.3213.)  But Moore was not represented by Barnett from October 14, 2011 (Claim of Appeal & Order Appointing Counsel, ECF No. 16-31, PageID.2571) through his direct appeal, which concluded with the Michigan Court of Appeals' affirmance of his convictions on February

12, 2013, *People v. Moore*, 2013 WL 514815 (Mich. Ct. App. Feb. 12, 2013), until Moore was once again represented by Barnett at some point later in 2013.

So if diligent investigation would have uncovered the West Virginia witnesses, and Barnett's incompetence was the only thing preventing diligent investigation, then the West Virginia witnesses could have been discovered, through the exercise of reasonable diligence, sometime shortly after October 2011, when replacement counsel was appointed and Barnett's failures could no longer stand in the way.

Even assuming it would have taken a few weeks or even a few months to discover the West Virginia witnesses in Barnett's absence, that still means that the date they "could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D), was earlier than "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review," *id.* (d)(1)(A), which is April 9, 2013, 56 days after the Michigan Court of Appeals affirmed Moore's convictions.

Because the date under (d)(1)(D) is earlier than the date under (d)(1)(A), the latter date controls.  *Id.* (d)(1) ("The limitation period shall run from the latest of . . .")

Moore argues that he was diligent in presenting his claim beginning at the point that he discovered the West Virginia witnesses. But the time does not run from when he discovered the witnesses.  It runs from when he could have discovered them through the exercise of due diligence.  Even assuming he has succeeded in showing that he could not have discovered them while represented by Barnett, he has not attempted to explain, much less explain, why he could not have discovered them in late 2011, in 2012, or in early 2013, when he was not represented by Barnett.

This Court should therefore find that the witnesses could have been discovered, through the exercise of due diligence, at some point before the conclusion of direct review, and therefore that the limitations period runs from the conclusion of direct review, and that his claim regarding the West Virginia witnesses is as untimely as his other claims.  Moore has presented no evidence or argument to the contrary.

II.   **Moore has not shown that trial counsel was constitutionally ineffective for failing to investigate and discover David Carbin.**

The first subclaim of ineffective assistance before this Court is

Moore's argument that trial counsel was ineffective for failing to

investigate and discover David Carbin, who has made a statement that

he saw Moore leave the scene of the murder a few hours before the

shooting occurred.

A.   **Standard of Review**

A claim of ineffective assistance of counsel is governed by

*Strickland v. Washington*, 466 U.S. 668 (1984).  To establish ineffective

assistance, Moore must demonstrate that counsel's performance was

objectively unreasonable and that he was prejudiced by counsel's action

or inaction.  *Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing

*Strickland*, 466 U.S. at 687–88).  Further, "[j]udicial scrutiny of

counsel's performance must be highly deferential . . . . Because of the

difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance."  *Strickland*, 466 U.S. at 689

(citation omitted).  Moreover, the reviewing court is required not simply

to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as he did. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011).

The second *Strickland* prong, that of prejudice, requires Moore to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because both prongs must be satisfied to establish ineffective assistance, if Moore cannot satisfy one prong, the other need not be considered. *Id.* at 697.

## B.    Analysis

In its order denying the State's motion to dismiss on timeliness grounds, this Court found that Moore "could not reasonably have discovered Carbin's existence at any time before Carbin contacted Moore's family in early 2015." (ECF No. 22, PageID.3151.) This Court further found, "Carbin was . . . entirely unconnected to this case, and there is no basis in the record for supposing Moore knew or *could have*

14

*known* about his account at any time before Carbin contacted Moore's family." (*Id.*, PageID.3152 (emphasis added).)

In light of these findings, it is difficult for Moore to show that any of trial counsel's failings led to the failure to discover Carbin. If it was impossible for Moore to discover Carbin before 2015—a period of time that includes Moore's appeal period, when he was represented by appellate counsel who could have investigated on his behalf—then it was necessarily impossible for Moore's trial counsel to discover Carbin before trial. And Moore makes no argument in his supplemental brief to this Court connecting trial court's deficiency to the failure to find Carbin. He does not explain what trial counsel should have done that would have led him to Carbin, or whom trial counsel could have talked to that would have set him on the path to Carbin.

In fact, Moore's discussion of prejudice relating to this claim discusses only what Moore contends is the weakness of the prosecution's case and the effects that Carbin's testimony would have had at trial, had he testified. But that skips some steps—a showing of prejudice must show how the outcome of the trial would have been different but for counsel's deficiency. In this case, that means first

showing how counsel would have found Carbin had he investigated as Moore thinks he should have, and then showing that he should have recognized value in Carbin's testimony, and then showing that Carbin would have testified consistent with his statement, and only *then* that that testimony would have had a reasonable probability of affecting the outcome of the trial.  Since Moore has attempted no explanation of what trial counsel could have done to discover Carbin, and since this Court has already found that there was no way for Moore to discover Carbin before Carbin contacted Moore (ECF No. 22, PageID.3151), Moore cannot show that he was prejudiced by trial counsel's failure to investigate as it relates to Carbin.

Further, even assuming Carbin would have been located by Barnett, and would have testified consistent with his statement, there is no reason to think that his testimony would have had a reasonable probability of changing the outcome of the trial.  As the state trial court pointed out in denying Moore's actual-innocence claim, Carbin's statement did not actually establish definitively that Moore was absent from the scene at the time of the murder.  (2/14/17 Wayne Cir. Ct. Op. & Order, ECF No. 12-2, PageID.291.)  Rather, he says that he saw Moore

leave the scene a few hours before the murder, but he does not say that he stayed at the scene.  Carbin says that he left and came back.  While he does say that he did not see Moore's car when he returned, that does not foreclose the possibility that Moore returned in a different car, or that he parked somewhere where Carbin did not see his car.  But even more to the point, as the trial court also pointed out, "As defendant was not convicted of shooting the complainant, but was held responsible for setting up the shooting, his physical presence is not necessary to uphold his conviction of felony murder."  (*Id.*)

For any or all of these reasons, Moore has failed to show that he was denied a fair trial by his trial counsel's failure to locate David Carbin.

If this Court should disagree with the State on this, the most Moore would be entitled to is an evidentiary hearing on the subject.  To be clear, the State's position is that Moore is not entitled to an evidentiary hearing because it is clear from the existing record that he is not entitled to relief.  The State's arguments at this stage do not depend on what might be established at an evidentiary hearing; rather, the State believes that no matter what an evidentiary hearing revealed,

17

Moore would not be entitled to relief.  But it bears noting that there is no affidavit and no testimony—i.e., no evidence—before this Court as to what David Carbin would have testified to had he been called at trial. Even if there were an affidavit, that alone would not be enough to determine entitlement to relief.  *Cf. Clark v. Warden*, 934 F.3d 483, 493–94 (6th Cir. 2019) (reversing where the district court granted habeas relief solely on the basis of an affidavit and remanding for a hearing).  Here, however, there is only an unsworn statement, which is at best a prima facie showing of what evidence might be established if this Court were to hold a hearing.

This Court should deny habeas relief altogether, but if it does not, it should hold a hearing rather than granting relief.[1]

## III.   Moore has not shown that trial counsel was constitutionally ineffective for failing to investigate and discover the West Virginia witnesses.

With respect to the West Virginia witnesses, Moore is in a similar position as with respect to Carbin.  If he succeeds in showing, as he

---

[1] The State does not waive an evidentiary hearing by urging this Court to deny relief without one.  *Clark*, 934 F.3d at 493 ("The State did not waive (or forfeit) its fallback position by emphasizing its most desired outcome.").

must in order for his claims to be timely, that there was no way to
discover the West Virginia witnesses before the end of his direct appeal,
then he has also succeeded in showing that there was nothing Barnett
could have done to discover the witnesses either, which is fatal to his
claim that Barnett's incompetence was responsible for the failure to find
the witnesses.  If, on the other hand, the witnesses could have been
discovered prior to trial, as the state trial court found in denying the
motion for relief from judgment (Wayne Cir. Ct. Op. & Order at 6, ECF
No. 12-2, PageID.291), then the claim is untimely, as discussed in
Argument I above.

Moore has not explained what Barnett should have done that
would have led him to discover the West Virginia witnesses.  Moore
himself alleges that he did not learn about these witnesses until 2015,
even though, as discussed above, he was represented by counsel other
than Barnett for much of the period between trial and 2015.

When it comes to explaining Barnett's deficient performance,
Moore supplies many specific examples relating to deficiencies
irrelevant to a failure to investigate (Pet'r's Supp. Br. at 25–27, ECF
No. 24, PageID.3201–03), and specific examples relating to cases other

19

than Moore's case (*id.* at 27–30, PageID.3203–06), but nothing specific to explain how his failure to investigate caused the failure to discover the West Virginia witnesses—that is, he never explains how an investigation would have uncovered these witnesses.

It is not obvious from the West Virginia witnesses' affidavits (Pet'r's Ex. H, Hammons Aff, ECF No.24-11, PageID.3243); Ex. I, Ferguson Aff., ECF No.24-12, PageID.3245; Ex. J, Crittenden Aff., ECF No. 24-13, PageID.3247) how Barnett would have discovered them had he undertaken a reasonable investigation, nor is it clear from Moore's brief or his affidavit (Pet'r's Ex. R, Moore Aff., ECF No.24-21, PageID.3291) what information he gave Barnett that would have allowed Barnett to locate and understand the relevance of these three witnesses.

Hammons attested that she was acquainted with Moore and Farnsworth.  (Hammons Aff. ¶¶ 2, 3, ECF No.24-11, PageID.3243.)  But Moore has not explained how Barnett should have known that a person who was merely acquainted with Moore and Farnsworth, who had no information about the murder of Ferguson, and who was more than 300 miles away when it happened, could have given useful testimony about

Farnsworth's character and reputation for honesty.  Even assuming Barnett failed to do a reasonable investigation, Moore has not shown that a reasonable investigation would have found Hammons.

Ferguson attests that she was acquainted with Farnsworth (Ferguson Aff. ¶ 3, ECF No.24-12, PageID.3245), but she does not attest that she was acquainted with Moore.  Other than being the victim's sister, Ferguson would have had no apparent connection to this case at all.  Moore does not explain, nor is it apparent from Ferguson's affidavit, how Barnett should have known that the victim's sister, again more than 300 miles away from the crime, would have had useful information on Farnsworth's character.

Most tenuous of all, Crittenden attests that she is barely acquainted with Farnsworth, and has no personal relationship with her. (Crittenden Aff. ¶ 3, ECF No. 24-13, PageID.3247.)  Crittenden is the victim's brother's girlfriend and, like the other witnesses, lives in West Virginia.  (*Id.* ¶¶ 1–2.)  While she has many impressions about Farnsworth and about Farnsworth's relationship to the victim (*id.* ¶¶ 4–11), there is nothing in her affidavit or in Moore's that makes

clear that she would have been discovered through a reasonable investigation undertaken by Barnett.

It is also important to note that, as the state trial court held in denying relief on Moore's actual-innocence claims, none of these affiants had any information that would have exculpated Moore: "At best the aggregate of these affidavits implicate Farnsworth as an accomplice, but, does not serve to exonerate defendant as a person responsible for the complainant's death."  (Oakland Cir. Ct. Op. & Order at 6, ECF No. 12-2, PageID.291.)  This is not to say that the testimony of these affiants would have been entirely irrelevant, but that their relevance to Farnsworth's character, reputation, and credibility was tangential to the issue of Moore's guilt—a jury could have easily believed that Farnsworth lied about some things while still believing that she was telling the truth about Moore's involvement in the killing of William Ferguson.

For these reasons, Moore is not entitled to relief on this claim, assuming it is timely.

## CONCLUSION

Moore's claim relating to the West Virginia witnesses is barred by the applicable statute of limitations as detailed above. Further, Moore has not shown that he was denied a fair trial by ineffective assistance of counsel relating to either David Carbin or the West Virginia witnesses. Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. Further, Moore has not demonstrated entitlement to discovery. Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery." *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause." R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.' " *Williams v.*

23

*Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)).  "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.' " *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); Habeas Rule 6(a).  "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974 (internal quotation marks and citation omitted).  Moore has not met this burden.

If this Court denies the petition, Moore is also not entitled to a certificate of appealability (COA) so as to proceed further.  In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483–84, *see also Dufresne v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017) ("To meet *Slack*'s standard, it is not enough for a petitioner to allege claims that are arguably *constitutional*; those claims must also be arguably *valid* or *meritorious*.")

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.  *Id.*, *see also Dufresne*, 876 F.3d at 254.

"At the end of the day, 'the gate keeping functions of certificates of appealability [is to] separate the constitutional claims that merit the close attention of . . . this court from those claims that have little or no viability.' " *Dufresne*, 876 F.3d at 254 (quoting *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).  Here, this Court should deny Moore a COA on his claims.  The claims simply "have little or no viability."

## RELIEF

For the reasons stated above, this Court should deny the petition. The Court should also deny Moore any requested discovery, evidentiary hearings, bond, oral argument, and any other relief he seeks in this action, including a certificate of appealability.

Respectfully submitted,

Dana Nessel
Attorney General

s/Linus Banghart-Linn

Assistant Attorney General
Criminal Trials and Appeals
Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7650
Banghartlinnl@michigan.gov
P73230

Dated: January 26, 2021
2015-0123023-A/Answer/Moore.Vincent

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2021, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE JAMES G. CARR
MAGISTRATE JUDGE MONA K. MAJZOUB
CRAIG A. DAILY, Attorney for Petitioner

Respectfully submitted,

Dana Nessel
Attorney General

s/Linus Banghart-Linn

Assistant Attorney General
Criminal Trials and Appeals
Division
P.O. Box 30217+
Lansing, MI  48909
(517) 335-7650
Banghartlinnl@michigan.gov
P73230