# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Vincent Moore,                                    Case No. 2:15-cv-13319

      Petitioner

v.                                          **ORDER**

Thomas Mackie, Warden,

      Respondent.

This is a state prisoner's habeas corpus petition under 28 U.S.C. § 2254.

In 2011, a jury in Wayne County, Michigan convicted the petitioner, Vincent Moore, of felony murder and armed robbery. The state trial court sentenced Moore to life imprisonment for murder and an indefinite term of fifteen to thirty years' imprisonment for armed robbery.

Having exhausted his state-court remedies, Moore now seeks a writ of habeas corpus based on three categories of allegedly newly-discovered evidence. Pending is respondent's renewed motion to dismiss the petition as untimely under 28 U.S.C. § 2244(d). (Doc. 15).

In a prior decision, (Doc. 22), I held timely one category of that purportedly newly-discovered evidence, the David Carbin affidavit. I held untimely the affidavits of Moore's family members. As to the third category, affidavits from witnesses from West Virginia, I held that the motion briefing did not present sufficient evidence for me to determine whether Moore had asserted his claim relating to them timely. I ordered supplemental briefing on this issue, (*Id.*), and the parties have complied. (Docs. 24, 26).

Upon review of that briefing, for the reasons stated below, petitioner has failed to carry his burden to demonstrate that the West Virginia witnesses' affidavits qualify as newly-discovered for habeas deadline purposes.

The sole remaining piece of newly-discovered evidence that Moore timely filed - Carbin's affidavit - is substantively insufficient to qualify Moore for a delayed start date to the one-year statutory deadline under 28 U.S.C. § 2241(d)(1)(D). I therefore deny his petition.

**Background**

Viewed in the light most favorable to the verdict, the prosecution's evidence permitted the jury to find that Moore and several unnamed (and uncharged) confederates set up a proposed drug deal with William Ferguson; that one those confederates shot Ferguson after it was confirmed that Ferguson had a large amount of cash; and that Moore took the money from Ferguson's pocket after he had been shot:

> On September 4, 2010, the victim, William Ferguson, his girlfriend, Heather Farnsworth, and her friend, Krystal Breck, drove from Huntington, West Virginia to Detroit. Farnsworth and the victim had made arrangements to meet with defendant, Vincent Moore, and purchase 400 Oxycontin pills. Farnsworth had met defendant in West Virginia and had conducted drug purchases from him since then but this was the first time she and the victim had traveled to Detroit to purchase narcotics from defendant.
>
> The victim and his friends arrived in Michigan and Farnsworth contacted defendant to arrange for a place to meet. At approximately 9:30 a.m., Farnsworth parked the group's Chevrolet Impala at a Burger King restaurant near Gratiot Avenue in Detroit in order to wait for defendant. Defendant arrived 10 to 15 minutes later in a dark-colored Impala. Another male was with defendant in the car. Defendant spoke to Farnsworth and told her to follow him to a gas station. At the gas station, defendant went into the store. Defendant exited the store with a juice bottle. Defendant spoke to Farnsworth and told her to follow him to a house. At the house, defendant went inside for a short period of time. Defendant returned to his car and told Farnsworth to follow him to another house. Defendant led Farnsworth, the victim, and Breck to a house at 10643 McKinney Street in Detroit.
>
> At the house on McKinney, defendant spoke to Farnsworth while she was still in her vehicle. Defendant offered Farnsworth some marijuana and talked with her for a few minutes. Defendant then led Farnsworth, the victim, and Breck inside the house. The male that accompanied defendant to meet Farnsworth stayed in the dark-colored Impala. Inside the house was

2

another male. The group talked inside the house for approximately 15 minutes. During this time, defendant was drinking from his bottle of juice and used his phone. Farnsworth left the house to go to her car and get cigarettes. The victim and Breck stayed inside the house with defendant and the other male. Outside, Farnsworth recorded the license plate number for the dark-colored Impala because she had a strange feeling that something was going to happen. Farnsworth returned to the house and gave defendant and the other man a cigarette. Farnsworth and the victim went into a separate room to count the money they intended to use to purchase the Oxycontin. Between Farnsworth and the victim, they had $14,000. The victim put the money into his pocket and Farnsworth told defendant that they were ready to purchase the pills.

Defendant talked with Farnsworth and the victim for a short period of time before indicating that he was going outside to get some marijuana. Defendant walked toward the rear of the house. A few seconds later, several men rushed into the house carrying guns. The other man in the house also grabbed a gun. Farnsworth believed that all the weapons were long guns. Farnsworth and Breck were ordered to get down. Farnsworth heard one of the men then direct another to hit the victim in the head. Farnsworth heard a loud smack and saw the victim fall down. The victim got back up and moved toward the front door. At that point, gunfire started. The victim fell again. Defendant, carrying a long gun, walked toward the victim. Defendant took the money from the victim and went toward the rear of the house again. The other men then left the house. Neighbors across the street from the house heard the gunshots and looked outside. Two men with their faces obscured walked from the side of the house carrying long guns. The two men got into an Impala. The Impala went in reverse around the corner toward the side of the house and out of the neighbors' vision.

At least 13 ammunition casings were found inside of the house. The victim was shot four times. One bullet struck the victim in the back of the head and exited out the other side of the head after traveling through the brain. Another bullet struck the victim in the chest perforating both lungs and the pericardial sack. A third bullet hit the victim in the abdomen and a forth [sic] bullet broke the victim's left femur. The victim died from his wounds. Investigation of the evidence found at the murder scene revealed that the casings found were all ejected from the same weapon. The license plate number recorded by Farnsworth was registered to defendant's father. DNA found on a juice bottle and a cigarette located inside the house matched defendant.

(Doc. 16–31, PgID 2616–18).

Moore filed his federal habeas petition on September 21, 2015. (Doc. 1). Subsequently, he moved for a stay to allow him to exhaust his newly-discovered evidence claims in the Michigan courts. (Doc. 5). The Honorable Denise Page Hood granted that motion.[1] (Doc. 11).

Moore then filed a second post-conviction petition in the Michigan courts. He argued that he filed his second petition timely because it was based on three categories of newly-discovered evidence: 1) affidavits by his family members stating that he was home at the time of the murder; 2) affidavits from witnesses who knew the prosecution's most important witness, Heather Farnsworth, from when she lived in West Virginia (collectively, the "West Virginia witnesses"), stating that she had a reputation as a liar and a thief and had lied during her trial testimony; and 3) an affidavit by David Carbin stating that he had seen two perpetrators when they were escaping the murder scene and that neither of them was Moore.

The trial court denied that petition. (Doc. 24-9). It rejected Moore's family's affidavits on the ground that Moore could have discovered this evidence prior to trial. (*Id.*, pgID 3238). It rejected the West Virginia witnesses' affidavits on the ground that their testimony that Farnsworth had a reputation as a liar and a thief did not constitute new evidence for statute of limitations purposes because it amounted solely to impeachment evidence. (*Id.*)

The court also rejected Moore's third category of newly-discovered evidence - Carbin's affidavit – on the ground that it was insufficient substantively for two reasons. First, the affidavit failed to establish that Moore was not present during the murder. Second, because the prosecution charged Moore with aiding and abetting for setting up the murder and robbery, he, therefore, did not have to be present during the murder and robbery to be guilty of them. (*Id.*).

---

[1] Because Judge Hood, who presided over Moore's trial, has since become a District Judge on this court, the Sixth Circuit designated me to hear this case.

In his habeas petition, Moore raised the same three categories of purportedly newly-discovered evidence.[2] In my prior order, (Doc. 22), I rejected Moore's family's affidavits as newly-discovered evidence because they were available to him prior to trial. I held that Carbin's affidavit qualified as newly-discovered evidence and ordered supplemental briefing regarding the West Virginia witnesses, (Doc. 22, pgID 3151, 3162-63).

## Discussion

### A. The West Virginia Affidavits Are Not Timely

A defendant seeking habeas relief on the ground of newly-discovered evidence bears the burden of demonstrating that the new evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*Blalock v. Wilson*, 320 F. App'x 396, 419 (6th Cir. 2009).

Moore has failed to carry his burden to show that the West Virginia witnesses could not have been discovered before trial with due diligence.

Moore's affidavit declares only that he was not aware of those witnesses until 2015. (Doc. 24-21, pgID 3292). None of those witnesses' affidavits provides any information regarding how or when Moore's current counsel learned they existed or found and contacted them. And, Moore has not provided any other evidence to explain when or how his counsel learned of their existence, when or how counsel found and contacted them, or why Moore, acting diligently, could not have discovered them sooner.

---

[2] Moore also submitted a 2019 affidavit from a fellow prisoner stating that he had overheard a 2010 dispute during a dice game over the fact that another person had killed the victim. I held that affidavit was not reliable enough to qualify as newly-discovered evidence. (Doc. 22, pgID 3161).

Without that basic information, Moore has not met his burden to demonstrate diligence. For one example, one West Virginia affiant, Nicole Hammons, states that she met Moore through his family members in West Virginia. (Doc. 24-11, pgID 3243). She also met Farnsworth because Farnsworth grew up West Virginia. It is not at all clear whether Moore's counsel learned of the West Virginia witnesses from Moore or Moore's family or why Moore was unable to identify those witnesses prior to trial through his relatives in West Virginia.

"Because [Moore] has failed to establish 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence,' 28 U.S.C. § 2244(d)(1)(D), [he] did not meet [his] burden of establishing that [the West Virginia witnesses' affidavits qualify as] newly-discovered evidence."[3] *McSwain v. Davis*, 287 F. App'x 450, 454–55 (6th Cir. 2008).

Accordingly, the West Virginia witnesses' affidavits are not newly-discovered evidence and they cannot support Moore's claim that he filed his habeas petition timely.

### B. The Carbin Affidavit Is Not Sufficient to Justify Habeas Relief

The only remaining piece of newly-discovered evidence, the Carbin affidavit, fails to "disclose a strong probability that it will change the result if a new trial is granted." *Blalock, supra*, 320 F. App'x at 419.

Carbin avers that he is familiar with Moore from years of living in the same neighborhood. (Doc. 24-10) He states that he was walking by the crime scene earlier in the morning before the murder and saw Moore park his car and go into the house in question. (*Id.*, pgID 3240-41). Hours later, when he passed the house again on his return trip, he heard shots and then saw two armed men escaping from the

---

[3] The West Virginia witnesses' affidavits also cannot qualify as newly-discovered evidence because their statements regarding Farnsworth's reputation for dishonesty provide only impeachment evidence. *See Blalock, supra*, 320 F. App'x at 419.

house and driving away. (*Id.*, pgID 3241). Neither of them was Moore. (*Id.*). He also avers that Moore's car was no longer parked in front of the house upon his return. (*Id.*, pgID 3241-42). He explains that he did not come forward before trial because he only realized that he had walked past a murder scene and that Moore had been convicted for murder after the trial. (*Id.*, pgID 3242). He then contacted Moore's family to provide his information. (*Id.*).

As the trial court held, the Carbin affidavit is insufficient substantively to establish even a reasonable likelihood of altering the verdict. That ruling is legally irrefutable. Because the prosecution charged Moore as an aider and abettor of the robbery and murder for setting up the meeting as a trap to rob the victim, he did not need to be physically present during the crimes to be criminally liable for them.

> To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony.

*People v. Riley*, 659 N.W.2d 611, 614 (2003).

"A person who aids or abets a principal in the commission of a crime may be convicted and punished as if he committed the crime himself." *People v. Clemons*, No. 277616, 2008 WL 2262148, at *2 (Mich. Ct. App.). Setting up a meeting to facilitate a robbery certainly constitutes assisting in the commission of the robbery whether or not Moore actually was present during the robbery. *See id.* at *3.

For example, the Defendant in *Clemmons* led the victim to a house and left him on the porch. *Id.* at *1. Two accomplices then arrived and robbed the victim at gunpoint. *Id.* The Michigan Court of Appeals upheld his conviction for robbery as an aider or abettor. *Id.* at *2-3.

Thus, Moore has not met the requirement to show that his attorney's performance "undermine[d] confidence in the outcome" or that "but for counsel's unprofessional errors, result of the proceeding

7

would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). His ineffective assistance claim, therefore, fails.

Accordingly,

It is hereby

ORDERED THAT:

Petitioner's petition for writ of habeas, Corpus (Doc. 1), is denied. The Clerk of Court shall mark this case closed.

In light of the lack of merit to petitioner's substantive claim, I conclude that jurists of reason could not rationally dispute the denial of relief. Accordingly, I decline to issue a Certificate of Appealability.

So ordered.

/s/James G. Carr
Sr. U.S. District Judge